**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**LAREDO DIVISION**

| | | |
|---|---|---|
| **NCDR, L.L.C.; DENTISTRY OF** | § | |
| **BROWNSVILLE, P.C. d/b/a KOOL** | § | |
| **SMILES; and KS2 TX, P.C. d/b/a KOOL** | § | |
| **SMILES;** | § | |
| | § | |
| **Plaintiffs,** | § | **Case No. 5:12-cv-36** |
| | § | |
| **v.** | § | **JURY TRIAL DEMANDED** |
| | § | |
| **MAUZÉ & BAGBY, PLLC;  GEORGE** | § | |
| **WATTS MAUZÉ II; and JAMES** | § | |
| **THOMAS BAGBY III;** | § | |
| | § | |
| **Defendants.** | § | |

**PLAINTIFFS' ORIGINAL COMPLAINT FOR DAMAGES**

Plaintiffs NCDR, L.L.C.; Dentistry of Brownsville, P.C. d/b/a Kool Smiles; and KS2 TX, P.C. d/b/a Kool Smiles (collectively, "Kool Smiles" or "Plaintiffs"), by way of this Complaint that they file against Defendants Mauzé & Bagby, PLLC; George Watts Mauzé II ("Mauzé"); and James Thomas Bagby III ("Bagby") (collectively, "Defendants") show as follows:

## NATURE OF THE ACTION

1.      This is an action for damages premised on Plaintiffs' claims for defamation, business disparagement, trademark infringement, false advertising (designation of origin), cyberpiracy prevention (anti-cybersquatting), injury to business reputation, and trademark dilution in which Plaintiffs seek injunctive relief, damages, and attorneys' fees.

## PARTIES

2.     NCDR, L.L.C. is a limited liability company incorporated under the laws of the State of Delaware whose principal place of business is located in Marietta, Georgia.  NCDR, L.L.C. is registered and authorized to conduct business within the State of Texas.

3.     Dentistry of Brownsville, P.C. d/b/a Kool Smiles is a professional corporation incorporated under the laws of the State of Texas that maintains its principal place of business within the State of Texas.

4.     KS2 TX, P.C. d/b/a Kool Smiles is a professional corporation incorporated under the laws of the State of Texas that maintains its principal place of business within the State of Texas.

5.     Defendant Mauzé & Bagby, PLLC is a professional limited liability company incorporated under the laws of the State of Texas that maintains its principal place of business within the State of Texas.  Mauzé & Bagby PLLC may be served via its registered agent, J. Thomas Bagby, 2632 Broadway, Suite 402 South, San Antonio, Texas 78215.

6.     Upon information and belief, Defendant Mauzé is a natural person who resides at 531 Arcadia Place, Terrell Hills, Texas 78209. Mauzé is a managing member of Mauzé & Bagby, PLLC.  Mauzé may be served at his residence; at his place of business, Mauzé & Bagby, PLLC, 2632 Broadway, Suite 402 South, San Antonio, Texas 78125; or anywhere else he may be found.

7.     Upon information and belief, Defendant Bagby is a natural person who resides at 2018 Flamingo Street, San Antonio, Texas 78209.  Bagby is the organizer and a managing member of Mauzé & Bagby, PLLC.  Bagby may be served at his residence; at his place of

business, Mauzé & Bagby, PLLC, 2632 Broadway, Suite 402 South, San Antonio, Texas 78125; or anywhere else he may be found.

## JURISDICTION AND VENUE

8.      Subject matter jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1331 because this is a civil action that arises under the Constitution, laws, or treaties of the United States.   This civil action arises under the Trademark Act of 1946, as amended (the "Lanham Act"), 15 U.S.C. § 1051, including Section 32(1), or 15 U.S.C. § 1114(1), for infringement of a registered mark; and for violations of Sections 43(a) and 43(d), or 15 U.S.C. §§ 1125(a) and (d), for false advertising (designation of origin) and cyberpiracy prevention (anti-cybersquatting).

9.      This Court also has supplemental jurisdiction over the remaining claims pursuant to 28 U.S.C. § 1367(a).

10.      Defendant Mauzé & Bagby, PLLC is subject to personal jurisdiction because it is incorporated in the State of Texas, its principal place of business is located in the State of Texas, and it regularly conducts business within the State of Texas.

11.      Defendant Mauzé is subject to personal jurisdiction because he resides in and regularly conducts business within the State of Texas.

12.      Defendant Bagby is subject to personal jurisdiction because he resides in and regularly conducts business within the State of Texas.

13.      Venue in this Court is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial portion of the events at issue occurred in this district.  On information and belief, the advertisements and website at issue in this Complaint were either broadcast or made accessible by Defendants in Laredo, Texas, where clinics owned, managed, and operated by Plaintiffs are located.  Defendants also made statements similar to those made in their advertisements in a

television news report aired in Laredo, Texas.  As a consequence, Plaintiffs were harmed in Laredo by Defendants' advertisements through losses in business, patients, revenue, reputation, and all other injuries defined herein.

## FACTS GIVING RISE TO THE ACTION

### Kool Smiles' Business

14.     Kool Smiles' mission is to provide high quality dental care to underserved children and their parents.  Patients seeking dental care at Kool Smiles are frequently supported by state- or federally-funded programs, such as Medicaid.

15.     Kool Smiles patients often have limited or no access to needed dental care and rely on the services of Kool Smiles dentists to maintain their oral health.

16.     Kool Smiles, its dentists, and its staff are dedicated to addressing this important oral health need in a courteous and compassionate manner, while maintaining the highest quality standards of clinical quality and integrity.

17.     Kool Smiles employs dentists in over thirty clinics in various cities in Texas.

18.     Kool Smiles conducts extensive compliance and clinical reviews of the dentists it employs.  All Kool Smiles dentists are dental school graduates, have completed applicable boards of examination, have obtained applicable state dental licenses, are subject to background checks, have received appropriate credentialing, and are fully qualified to practice dentistry.

19.     Kool Smiles dentists perform dental procedures when deemed medically necessary.

20.     The names "Kool Smiles" and "Kool Smiles General Dentistry for Children," along with various stylized renderings, including specific color combinations, are registered with the United States Patent and Trademark Office.   Specifically, Registration Number

2816474 covers the service mark "Kool Smiles General Dentistry for Children," (*see* Ex. 1, "Kool Smiles General Dentistry for Children" Trademark Registration Documents) and Registration Number 2804403 covers the service mark "Kool Smiles" (*see* Ex. 2, "Kool Smiles" Trademark Registration Documents).

21.     These registered marks are owned by Plaintiff NCDR, L.L.C.

22.     Further, the Kool Smiles logo on Kool Smiles' website, www.mykoolsmiles.com, bears a "TM" symbol in the lower right-hand corner.

<u>Defamatory Advertising Campaign Against Kool Smiles</u>

23.     On or about February 4, 2012, Defendants began publishing a website (www.koolsmilesclaims.com) (the "KoolSmilesClaims Website") soliciting potential legal claims from Kool Smiles customers relating to pediatric dental services provided by Kool Smiles.   *See* Ex. 3, Feb. 7, 2012 Letter from the State Bar of Texas Advertising Review Committee to Tom Bagby regarding website (Case No. 51355) (KoolSmilesClaims Website). The website address included the "Kool Smiles" name.  The website also displayed in large type "Kool Smiles" and used a similar color scheme to Plaintiffs' trademark of Kool Smiles.

24.     Defendants' website made false and unsubstantiated representations, asking readers of the website whether their children were (1) "strapped down to a papoose board?" or (2) "upset, crying, terrified, or traumatized?"   Defendants' website also made false and unsubstantiated statements directed at Kool Smiles by asking: (1) "Does your child have a mouthful of stainless steel crowns?" (2) "Did Kool Smiles perform extensive dental work on your child's baby teeth? Why?" (3) "If Kool Smiles cemented crowns on your child's permanent teeth, did they tell you that stainless steel crowns have to be replaced every 10 years on

average?" and (4) "Did you know your child might be spending thousands of dollars for dental care for the rest of his/her life?"  Ex. 3 (KoolSmilesClaims Website).

25.     The questions presented on the website implied that all of these activities happen with regularity at Kool Smiles.  Further, these comments on the website misled some into the concern or belief that there were problems with the quality of the dental care that Kool Smiles provided.  Without any substantiation of their claims, Defendants' questions deliberately misled the public by unfairly casting Kool Smiles and its provision of dental services in an unfavorable light.

26.     Defendants' website included a picture of what appeared to be a young child's open mouth, showing six visible upper teeth of which four are completely capped in stainless steel.  The picture supported Defendants' false and misleading statements that Kool Smiles inappropriately and regularly capped young children's teeth with stainless steel crowns.  The image was misleading and disturbing to the public and harmful to Kool Smiles.

27.     Further, on the KoolSmilesClaims Website, under a section titled "Kool Smiles and Medicaid," Defendants state that following the passage of legislation to increase Medicaid reimbursements for children's dental services, "hundreds of dental clinics, targeting children eligible for Medicaid, have opened throughout our country.  Unfortunately, many of these dental clinics have exploited our children to increase their revenue."   Immediately thereafter, Defendants identify Kool Smiles clinics in seven cities in Texas (El Paso, McAllen, Weslaco, Mission, Brownsville, Eagle Pass, and Laredo), and state that those clinics "collected more than Twenty Five Million Dollars ($25,000,000.00) in Medicaid reimbursements."   Ex. 3 (KoolSmilesClaims Website).

28.     The proximity of these statements alleging that dental clinics serving children are engaged in Medicaid fraud to a description of Kool Smiles and its Medicaid reimbursements clearly indicates that Kool Smiles obtained its reimbursements by exploiting children to increase its revenue.  The accusation of Medicaid fraud, particularly when these comments appear on a website generally attacking Kool Smiles, is even more evident.

29.     The implication that Kool Smiles engages in Medicaid fraud in Texas is false, misleading to the public, and has harmed Kool Smiles.

30.     Not until the eve of making the website available to the public, on or about February 2, 2012, did Defendants file the website content with the Advertising Review Committee of the Texas State Bar (the "Advertising Review Committee").  *See* Ex. 3 (Application Form for Lawyer Advertising and Solicitation Communications).  They neither requested nor received preapproval of its contents before disseminating it to the public.  Ex. 3 (Application Form for Lawyer Advertising and Solicitation Communications).

31.     On or about February 4, 2012, Defendants also purchased advertisements on various search engines, including Google, Yahoo, and Bing, that offered a link to their website at the top of a search page whenever Internet users conducted searches related to Kool Smiles, such as: "Kool Smiles," "Kool Smiles Medicaid," and "Kool Smiles insurance."

32.     Some Kool Smiles patients who searched for the Kool Smiles' website selected Defendants' advertising link instead and were diverted from their initial intended purpose by the disturbing images and defamatory allegations posted on Defendants' website.  Once patients clicked on Defendants' link, the damage was done — they would be unlikely to return to their initial purpose of seeking out information regarding Kool Smiles, whether they had intended to make a dental appointment or get insurance information.  After visiting Defendants' website, the

patients may have been influenced to seek dental care elsewhere or become clients of Defendants.

33.     Some Kool Smiles patients represented that they were actually confused about whether the Defendants' website was an official Kool Smiles website.  Other patients thought that Defendants' website was instructing them to go to Kool Smiles locations in order to lodge a complaint.

34.     Kool Smiles patients were confused by Defendants' website, website address, and domain name.  The colors used on Defendants' website are similar to the Kool Smiles trademark and are likely to have caused confusion.  Additionally, the use of "Kool Smiles" in Defendants' website address and domain name is likely to have caused confusion.

35.     Defendants' use of Kool Smiles' name and trademarks created a likelihood of confusion, initial interest confusion, and actual confusion with respect to Kool Smiles' customers.

36.     Defendants used the website containing the Kool Smiles name and trademarks to solicit business for themselves.

37.     Defendants submitted no filings to the Advertising Review Committee regarding the Internet advertisement links purchased on search engines such as Google.

38.     On or about February 6, 2012, a Monday, Defendants began disseminating television advertisements soliciting claims from Kool Smiles customers relating to pediatric dental services provided by Kool Smiles.  See Ex. 4, Feb. 7, 2012 Letter from the State Bar of Texas Advertising Review Committee to Tom Bagby regarding television advertisements (Case No. 51353) (Application Form for Lawyer Advertising and Solicitation Communications).  According to documents filed by Defendants with the Advertising Review Committee, these

advertisements were disseminated to the public in the western and southern regions of Texas. Ex. 4 (Application Form for Lawyer Advertising and Solicitation Communications). Plaintiffs are aware of television advertisements that were shown on KVIA and KFOX in El Paso, Texas and on XRIO in Harlingen, Texas that referenced Kool Smiles.

39. The audio portion of Defendants' television advertisements made false and unsubstantiated statements, asking (1) "Was your child literally strapped down, crying and terrified?" and (2) "Did your child leave Kool Smiles with a mouth full of stainless steel crowns?" Ex. 4 (Transcript of Audio for Defendants' Television Advertisement). The video that accompanied these statements flashed the following false and unsubstantiated statements (1) "Strapped down!"; (2) "Crying!"; (3) "Terrified!"; and (4) "Mouthful of Stainless Steel Crowns." Ex. 4 (Description of Video for Defendants' Television Advertisement).

40. One news report described the television advertisements aired by defendants as "dark" and "allud[ing] to dental nightmares for children." The same picture that was also included on Defendants' website of a child with four of six visible upper teeth capped entirely in stainless steel was flashed on the screen, while ominous-sounding audio implied that Kool Smiles will improperly give children a mouth full of stainless steel crowns. The television advertisement indicated that Kool Smiles is "terrifying" children by "strapping" them down and performing unnecessary and unwanted procedures. Such unsubstantiated, misleading, deceptive, and/or false allegations did and continue to do considerable damage to Kool Smiles' public image and misled the public.

41. Again, only days before the advertisements began airing, on or about February 2, 2012, Defendants filed the script and description of the television advertisements with the Advertising Review Committee, but did not request nor receive preapproval of their contents

before disseminating them to the public.  Ex. 4 (Application Form for Lawyer Advertising and Solicitation Communications).

42.     On or about February 6, 2012, Defendants began disseminating radio advertisements, in English and in Spanish, soliciting claims from Kool Smiles customers relating to pediatric dental services provided by Kool Smiles.  *See* Ex. 5, Feb. 7, 2012 Letter from the State Bar of Texas Advertising Review Committee to Tom Bagby regarding radio advertisements (Case No. 51354) (Application Form for Lawyer Advertising and Solicitation Communications).  According to documents filed by Defendants with the Advertising Review Committee, these advertisements were disseminated to the public in the western and southern regions of Texas.   Ex. 5 (Application Form for Lawyer Advertising and Solicitation Communications).  Plaintiffs are aware of radio advertisements that were played on KPRR in El Paso, Texas; on KNEX in Laredo, Texas; and on KBFM in Harlingen, Texas that referenced Kool Smiles.

43.     Defendants' radio advertisements made false and unsubstantiated representations, asking listeners (1) "Was your child literally strapped down, crying and terrified?" (2) "Did your child leave Kool Smiles with a mouth full of stainless steel crowns?" (3) "Did Kool Smiles place ugly, and possibly unnecessary, crowns on your child's baby teeth?" (4) "Did Kool Smiles place unwanted crowns on your child's permanent teeth?" and (5) "Did they tell you . . . your child will have to replace these crowns many times in his or her life; and the cost will be thousands of dollars?"  Ex. 8; *see specifically* Transcript of Defendants' Radio Advertisements.  Each of these statements also was made in radio advertisements in Spanish.

44.     The radio advertisements misled the public and harmed Kool Smiles by indicating that children are strapped down, left with mouths full of stainless steel crowns, and subjected to

unnecessary procedures that will present a lifetime of higher dental costs. These statements were very pointed, disturbing, and deliberately designed to make parents whose children received treatment at Kool Smiles fearful enough to seek consultation with Defendants.

45.   On or about February 2, 2012, Defendants filed the scripts of the English and Spanish radio advertisements with the Advertising Review Committee, but did not request nor receive preapproval of their contents before disseminating them to the public. Ex. 5 (Application Form for Lawyer Advertising and Solicitation Communications).

46.   Upon information and belief, Defendants also established a toll-free telephone line dedicated to receive phone calls from Kool Smiles patients in response to Defendants' defamatory advertising campaign. The KoolSmilesClaims Website and the television and radio advertisements directed parents of Kool Smiles' pediatric patients to call 1-800-200-9096 "for a free consultation" from a "trusted lawyer in San Antonio." *See* Exs. 3, 4, 5 (Transcripts and Website Content).

47.   Defendants submitted no filings to the Texas State Bar regarding their solicitation of business via the toll free telephone number, 1-800-200-9096.

48.   The Texas Disciplinary Rules of Professional Conduct generally prohibit solicitations by lawyers that involve well-known opportunities for abuse of prospective clients. Traditionally, the principal concerns presented by in-person, telephone, or electronic solicitations are that they can overbear the prospective client's will, lead to hasty and ill-advised decisions concerning choice of counsel, and be very difficult to police. By their advertisements aimed at soliciting claims against Kool Smiles, Defendants risk doing just that. Instead of helping clients who come to Defendants with a problem, Defendants' advertisements strongly implied that Kool Smiles is involved in nefarious and even criminal activities in order to lure new clients or even to

11

foment litigation that would otherwise not exist. Defendants made these allegations publicly without justifying any of their statements. It was an attempt by Defendants to find new clients that deliberately or recklessly harmed Kool Smiles and misled the public.

49.     As a result of the advertisements and website content, Kool Smiles began receiving numerous telephone calls from concerned patients, and a significant number of patients cancelled or did not appear for appointments. There was a consequent and substantial loss of revenue and profits. As of the filing of this Complaint, Kool Smiles continues to suffer the same harm.

Cease and Desist Letters

50.     On February 9, 2012, counsel for Kool Smiles sent a letter to Defendant Mauzé & Bagby, PLLC requesting that Mauzé & Bagby, PLLC cease and desist its use of Kool Smiles' registered marks. These marks include the phrases "Kool Smiles" and "Kool Smiles General Dentistry for Children," along with various stylized renderings, including specific color combinations.

51.     The letter warned Mauzé & Bagby, PLLC that it was violating various state and federal laws by its use of Kool Smiles' trademarks and by making false and unsubstantiated statements about Kool Smiles.

52.     Specifically, Mauzé & Bagby, PLLC was using, without permission, on its website and in its television commercials, stylized renderings of the phrase "Kool Smiles" very similar to that of Kool Smiles' trademarks.

53.     Further, Mauzé & Bagby, PLLC was using the phrase "Kool Smiles" in its website address and domain name, www.koolsmilesclaims.com. This was also without permission of Kool Smiles and was likely to cause, and did in fact cause, confusion.

54.     On February 13, 2012, Mauzé & Bagby, PLLC sent a response to Kool Smiles' February 9 letter indicating that it would not stop its advertising campaign.

55.     On February 16, 2012, Kool Smiles sent a second cease and desist letter that again demanded that Mauzé & Bagby, PLLC immediately cease its activities that were infringing Kool Smiles' trademarks.  By this time, Kool Smiles was aware of instances of actual confusion resulting from Mauzé & Bagby, PLLC's use of Kool Smiles' trademarks and informed Defendants of that fact.

56.     On February 20, 2012, Mauzé & Bagby, PLLC responded to Kool Smiles' second cease and desist letter, stating that, while it did not agree that it violated any state or federal laws, it has "modified and/or removed the content from all sources of media."

<u>Action by the Texas State Bar</u>

57.     The Texas State Bar's Advertising Review Committee sent three letters to Defendant Bagby on February 7, 2012.  *See* Exs. 3, 4, 5.  Each letter advised Bagby that the "advertisement or writing either requires additional information to substantiate representations that are contained therein, or it violates Part 7 of the Texas Disciplinary Rules of Professional Conduct."  *See* Exs. 3, 4, 5.  The correspondence from the Advertising Review Committee required that Mauzé & Bagby, PLLC remedy the violations within ten (10) days from the date of the letters, by February 17, 2012, or face a grievance committee review.

58.     In its first letter, the Advertising Review Committee advised Bagby that the website content submitted on behalf of Mauzé & Bagby, PLLC "require[d] additional information to substantiate representations that are contained therein, or it violates Part 7 of the Texas Disciplinary Rules of Professional Conduct."  *See* Ex. 3.  In particular, the website content contained potential violations of Rule 7.02(a)(1) or 7.05(a)(3) because "the material

indicated is false and misleading or contains a material misrepresentation;" and Rule 7.07(f), which "requires substantiation of representations made" in the advertising materials.

59.     Specifically, the Advertising Review Committee requested under Rule 7.07(f) that Bagby provide substantiation for the following statements made in the website content: (1) "strapped down to a papoose board?" (2) "upset, crying, terrified, or traumatized?" (3) "Did Kool Smiles perform extensive dental work on your child's baby teeth? Why?" (4) "If Kool Smiles cemented crowns on your child's permanent teeth, did they tell you that stainless steel crowns have to be replaced every 10 years on average?" and (5) "Did you know your child might be spending thousands of dollars for dental care for the rest of his/her life?"  Ex. 3 (Defendants' Website Content).

60.     In its second letter, the Advertising Review Committee advised Bagby that the television advertising materials submitted on behalf of Mauzé & Bagby, PLLC "require[d] additional information to substantiate representations that are contained therein, or it violates Part 7 of the Texas Disciplinary Rules of Professional Conduct."  *See* Ex. 4.  In particular, the content of the advertising materials contained potential violations of Rule 7.04(q), which requires that specific qualifications, disclaimers, or disclosures of information be presented in the same manner as the communication and with equal prominence; and Rule 7.07(f), which requires substantiation of the representations made in the advertising materials.

61.     Specifically, the Advertising Review Committee requested under Rule 7.07(f) that Bagby provide substantiation for the following statements made in the television advertisements: (1) "Was your child literally strapped down, crying and terrified?" and (2) "Did your child leave Kool Smiles with a mouth full of stainless steel crowns?"  Ex. 4 (Transcript of Audio for Defendants' Television Advertisement).

62.     In its third letter, the Advertising Review Committee advised Bagby that the radio advertising materials "either require[d] additional information to substantiate representations that are contained therein, or it violates Part 7 of the Texas Disciplinary Rules of Professional Conduct."  *See* Ex. 5.   In particular, the content of the radio advertising materials submitted on behalf of Mauzé & Bagby, PLLC contained potential violations Rule 7.07(f), which requires substantiation of the representations made in the advertising materials.

63.     Specifically, the Advertising Review Committee requested under Rule 7.07(f) that Bagby provide substantiation for the following statements made in the radio advertisements: (1) "Was your child literally strapped down, crying and terrified?" (2) "Did your child leave Kool Smiles with a mouth full of stainless steel crowns?" (3) "Did Kool Smiles place ugly, and possibly unnecessary, crowns on your child's baby teeth?" (4) "Did Kool Smiles place unwanted crowns on your child's permanent teeth?" and (5) "Did they tell you . . . your child will have to replace these crowns many times in his or her life; and the cost will be thousands of dollars?"  Ex. 5 (Transcripts of Defendants' Radio Advertisements).  The Advertising Review Committee requested under Rule 7.07(f) that Bagby provide substantiation for the same statements made in the Spanish version of the radio advertisement.  Ex. 5 (Transcripts of Defendants' Radio Advertisements).

64.     On or about February 13, 2012, Mauzé & Bagby, PLLC removed all of the advertisements.  At this time, Plaintiffs are not aware of any advertisements being sponsored by Defendants.  But, on or about February 16, 2012, Defendants stated in their response to the Advertising Review Committee that they have "temporarily stopped" the dissemination of the advertisements "for the purposes of making corrections."  *See* Ex. 6, Feb. 16, 2012 Letters from Tom Bagby to State Bar of Texas Advertising Review Committee.   Defendants'

comments to the State Bar of Texas clearly indicate that they plan to renew their advertisements at a future date.

65.    In response to the State Bar of Texas Advertising Review Committee, on or about February 21, 2012, Defendants submitted copies of "revised television commercials," in which Defendants state that they have "enlarged the words 'Sponsored by Attorney Tom Bagby, Principal Office, San Antonio, TX'" in order to comply with "Rule 7.04(q)." *See* Ex. 7, Feb. 21, 2012 Letter from Tom Bagby to State Bar of Texas Advertising Review Committee regarding Revised Television Advertisement.

66.    Defendants' revised television commercials still directly reference Kool Smiles and use "Kool Smiles" in the website address and domain name shown in the commercials. *See* Ex. 8, DVD containing Original and Revised Television Advertisements and Radio Advertisements (to be submitted in hard copy).  Defendants' revised television commercials still show the same disturbing images and make the same unsubstantiated claims that the Advertising Review Committee previously stated were in need of substantiation under Rule 7.07(f).  *See* Ex. 8.  Defendants submitted some information to the Advertising Review Committee, but the information was not cross-referenced to show how it supported Defendants' allegations against Kool Smiles.  Nevertheless, it appears that Defendants plan to run substantially similar television ads to those that were previously aired in the future.

67.    In response to the State Bar of Texas Advertising Review Committee, on or about February 21, 2012, Defendants submitted copies of a "revised section from our website . . . entitled 'Who We Are'" and attached an excerpt from the National Law Journal regarding plaintiff verdicts.

68.     Defendants' proposed website still directly references Kool Smiles on the website and in its website address and domain.  *See* Ex. 9, Defendants' Proposed Revised Website.  Defendants' revised website still shows the same disturbing images and makes the same unsubstantiated claims that the Advertising Review Committee previously stated were in need of substantiation under Rule 7.07(f).  *See* Ex. 9.  Defendants submitted some information to the Advertising Review Committee, but the information was not cross-referenced to show how it supported Defendants' allegations against Kool Smiles.  The submitted information clearly does not adequately support Defendants' false and misleading statements. Nevertheless, it appears that Defendants plan to post in the future a substantially similar website to the one they previously posted.

69.     It does not appear that Defendants have made any changes to their radio advertisements.  *See* Ex. 8 (DVD contains a revised television advertisement, but no revised radio advertisement).  Defendants' radio ads still make the same unsubstantiated claims that the Advertising Review Committee previously stated were in need of substantiation under Rule 7.07(f).  Defendants submitted some information to the Advertising Review Committee, but the information was not cross-referenced to show how it supported Defendants' allegations against Kool Smiles.  Nevertheless, it appears that Defendants plan to run the same radio ads in the future.

<u>News Reports</u>

70.     At or about the time Defendants removed all of their advertisements, television news stations began airing reports that included Defendants' defamatory claims against Kool Smiles.

71.     On February 17, 2012, KFOX 14 in El Paso, Texas aired a report regarding Kool Smiles in which it interviewed one of the Defendants, who stated "we have, and will be able to present, over 1,000 parents whose childrens [sic] were subjected to being strapped down to papoose boards and physically restrained for what was not extensive dental care."

72.     On February 28, 2012, KGNS-TV in Laredo, Texas aired a report regarding Kool Smiles in which it interviewed Defendant Mauzé, who stated that at least 1,000 complaints have been filed by parents who claimed their kids were mistreated. This news report also alleged that Kool Smiles "could be in a lot of trouble."

73.     These news reports stated that Defendants removed their advertisements because "they've gotten the response they needed to move forward with possible litigation."  Once again, Defendants made a misleading comment by failing to admit that the advertisements were, on information and belief, removed in response to the State Bar of Texas's requirement that they either substantiate their claims against Kool Smiles or remove the advertisements, or in response to Plaintiffs' cease and desist letters.  Additionally, Defendants' statement admits that they intended to profit from the confusion created by the patients drawn to their website who were initially intending to visit Kool Smiles' website.

74.     In addition to misleading the public about the reasons for discontinuing their advertisements, the statements made by Defendants about Kool Smiles in these news reports were also false and unsubstantiated.

75.     As of the filing of this Complaint, these news reports and corresponding video are still available on the websites of the news stations.

76.     As a result of the news reports aired by these and possibly other television stations and Defendants' campaign of false, misleading, and defamatory statements, Kool Smiles began

receiving telephone calls from concerned patients, and a significant number of patients cancelled or did not appear for their appointments.  Some patients expressly cited the advertisements and news reports as justification for cancelling their appointments.  Kool Smiles received many additional communications that expressed concern about future appointments.

Effect of Defamatory Advertising Campaign by Defendants

77.     By initiating a broad advertising campaign on the Internet, radio, television, and through news organizations, Defendants have made it appear, falsely, that Kool Smiles engages in improper activities that harm its pediatric patients.

78.     All of these advertisements, the website content, and Defendants' statements to the media suggest that Kool Smiles is systematically performing dental procedures on children that are not necessary.  Defendants offer no facts to support this broad, misleading, and extremely harmful false accusation of fact.

79.     Defendants negligently and maliciously engaged in this defamatory advertising campaign in an effort to obtain potential clients. By using Kool Smiles' trademarks and by stating that Kool Smiles engaged in questionable activities, Defendants have created harm to Kool Smiles and its business reputation.

80.     Defendants' activities resulted in lost profits, general damage, and special damage to Kool Smiles.  Additionally, Kool Smiles' business reputation and good will were damaged.  Specifically, Kool Smiles was harmed by Defendants' actions in the following ways:  (1) increased cancellations of patients, (2) increased patient no-shows, (3) decrease in new patients, (4) increased spending on rehabilitative advertisements designed to counter Defendants' advertisements, and (5) increased costs for staff and doctor personnel caused by

Defendants' negative and defamatory statements.  Plaintiffs suffered and continue to suffer substantial losses of profits, revenues, and increased expenses.

## COUNT I

## TRADEMARK INFRINGEMENT (15 U.S.C. § 1114)

81.    Kool Smiles realleges and incorporates by reference herein all of the allegations contained within Paragraphs 1 through 80 of this Complaint.

82.    Plaintiff NCDR, L.L.C. owns two federal registrations for Kool Smiles service marks, which serve to identify to the public certain goods and services that are offered by NCDR, L.L.C. and affiliated entities, and the goods and services offered in connection with those marks are regarded by the public as being offered by, approved by, authorized by, associated with, or affiliated with NCDR, L.L.C. and its affiliated entities.

83.    The service marks have been registered with the United States Patent and Trademark Office for more than eight years.

84.    Defendants' use of the Kool Smiles marks infringe NCDR, L.L.C.'s and its affiliated entities' exclusive rights in its federally registered marks.

85.    Defendants had actual or constructive notice of the marks.

86.    Without Kool Smiles' consent, Defendants used the marks in commerce in connection with the advertising of services.

87.    This use was likely to cause, and did in fact cause, confusion, mistake, or deception.

88.    The marks were depicted in advertisements and an imitation of the trademarks was also depicted on Defendants' website, www.koolsmilesclaims.com.  See Exs. 3, 4.

89.     Defendants had knowledge that such depictions or imitations would cause confusion, mistake, or would deceive.

90.     As a result of Defendants' infringement of the marks, Kool Smiles suffered damages, costs of suit, incurred attorneys' fees under exceptional circumstances, and is entitled to a permanent injunction against further infringement of its marks.

<u>COUNT II</u>

<u>FALSE ADVERTISING (DESIGNATION OF ORIGIN) (15 U.S.C. § 1125(a))</u>

91.     Kool Smiles realleges and incorporates by reference herein all of the allegations contained within Paragraphs 1 through 80 of this Complaint.

92.     Defendants, in connection with services in commerce, used the name "Kool Smiles" and "Kool Smiles" marks and associated symbols, which, in commercial advertising or promotion, misrepresented the nature, characteristics, and qualities of Kool Smiles' services or commercial activities.

93.     Defendants, in connection with services in commerce, used false or misleading representations of fact, which, in commercial advertising or promotion, misrepresented the nature, characteristics, and qualities of Kool Smiles' services or commercial activities.

94.     Defendants, in connection with services in commerce, used the name "Kool Smiles" and Kool Smiles' marks in a way that was likely to cause confusion, mistake, or to deceive as to the affiliation, connection, or association of Kool Smiles with Defendants, or as to the origin, sponsorship, or approval of Defendants' services or commercial activities.

95.     Defendants' use of Kool Smiles' name and marks as well as their misstatements of fact regarding Kool Smiles did deceive, or had the capacity to deceive, a substantial segment of Kool Smiles' potential customers.

96.     The deception was material and was both likely to influence, and did influence, customers' decisions as to whether to use Kool Smiles' services.

97.     Kool Smiles has been and is likely to continue to be injured as a result, and is entitled to recover damages, costs of suit, attorneys' fees under exceptional circumstances, and a permanent injunction against further advertising involving its name and marks.

## COUNT III

## CYBERPIRACY PREVENTION (ANTI-CYBERSQUATTING) (15 U.S.C. § 1125(d))

98.     Kool Smiles realleges and incorporates by reference herein all of the allegations contained within Paragraphs 1 through 80 of this Complaint.

99.     Defendants used and, upon information and belief, registered a domain name, www.koolsmilesclaims.com, that was confusingly similar to Kool Smiles' mark.

100.    Defendants had a bad faith intent to profit from Kool Smiles' mark.

101.    As a result Defendants' actions, Kool Smiles suffered damages and is entitled to injunctive relief, the recovery of its costs, and, because this is an exceptional case, attorneys' fees.

## COUNT IV

## DEFAMATION VIA WEBSITE

102.    Kool Smiles realleges and incorporates by reference herein all of the allegations contained within Paragraphs 1 through 80 of this Complaint.

103.    Defendants created the domain name www.koolsmilesclaims.com and published this website on the Internet.

104.    Defendants also purchased advertisements on search engines, such as Google, that directed people to the KoolSmilesClaims Website.

105.    Defendants made The KoolSmilesClaims Website available to the general public, who visited the website at the suggestion of Defendants' advertisements or visited the website through browsing or Internet search engine results.

106.    The website published factual statements without legal excuse about Kool Smiles that were false and defamatory.

107.    The statements published by Defendants on the KoolSmilesClaims Website harmed Kool Smiles' reputation.

108.    Defendants acted with negligence, recklessness, or actual malice with regard to the truth of these statements.

109.    As a result, Kool Smiles suffered pecuniary harm.

110.    Further, Defendants' disparagement of Kool Smiles entitles Kool Smiles to special damages because, as a proximate result of Defendants' actions, Kool Smiles suffered direct, pecuniary loss in three forms:  (a) lost profits, (b) direct damages and increased expenses, and (c) damage to its business reputation and good will.

111.    Specifically, Kool Smiles lost customers who visited Defendants' website and were afraid to bring their children to Kool Smiles for dental care.  The good will and reputation of Kool Smiles were also diminished as a result of the statements on the website.

## COUNT V

## DEFAMATION VIA TELEVISION ADVERTISEMENTS

112.    Kool Smiles realleges and incorporates by reference herein all of the allegations contained within Paragraphs 1 through 80 of this Complaint.

113.    Defendants developed and sponsored advertisements which were broadcast on television stations and were seen by the public.

114.    The advertisements contained statements of fact that were false and defamatory referring to Kool Smiles.

115.    The statements published without legal excuse by Defendants in the television advertisements harmed Kool Smiles' reputation.

116.    Defendants acted with negligence, recklessness, or actual malice with regard to the truth of these statements.

117.    As a result, Kool Smiles suffered pecuniary harm.

118.    Further, Defendants' disparagement of Kool Smiles entitles Kool Smiles to special damages because, as a proximate result of Defendants' actions, Kool Smiles suffered direct, pecuniary loss in three forms:   (a) lost profits, (b) direct damages and increased expenses, and (c) damage to its business reputation and good will.

119.    Specifically, both existing and potential customers who were exposed to the ads were afraid to bring their children to Kool Smiles for dental care.  Customers cancelled their appointments as a result of the ads.  Further, Kool Smiles saw a sharp decline in new patients after the ads began airing, resulting in lost profits and missed opportunities.

## COUNT VI

## DEFAMATION VIA RADIO ADVERTISEMENTS

120.    Kool Smiles realleges and incorporates by reference herein all of the allegations contained within Paragraphs 1 through 80 of this Complaint.

121.    Defendants developed and sponsored advertisements which were broadcast on radio stations and were heard by the public.

122.    The advertisements contained statements of fact that were false and defamatory referring to Kool Smiles.

123.    The statements published without legal excuse by Defendants in the radio advertisements harmed Kool Smiles' reputation

124.    Defendants acted with negligence, recklessness, or actual malice with regard to the truth of these statements.

125.    As a result, Kool Smiles suffered pecuniary harm.

126.    Further, Defendants' disparagement of Kool Smiles entitles Kool Smiles to special damages because, as a proximate result of Defendants' actions, Kool Smiles suffered direct, pecuniary loss in three forms:   (a) lost profits, (b) direct damages and increased expenses, and (c) damage to its business reputation and good will.

127.    Specifically, both existing and potential customers who heard the ads were afraid to bring their children to Kool Smiles for dental care.   Customers cancelled their appointments as a result of the ads.   Further, Kool Smiles saw a sharp decline in new patients after the ads began airing, resulting in lost profits and missed opportunities.

## COUNT VII

## DEFAMATION VIA STATEMENTS IN TELEVISION INTERVIEWS

128.    Kool Smiles realleges and incorporates by reference herein all of the allegations contained within Paragraphs 1 through 80 of this Complaint.

129.    Defendants made public statements of fact during press interviews that were broadcast during news reports on television stations and seen by the public.

130.    The public statements made without legal excuse by Defendants contained false and defamatory statements referring to Kool Smiles.

131.    The public statements made by Defendants that were broadcast on television news reports harmed Kool Smiles' reputation.

132.    Defendants acted with negligence, recklessness, or actual malice with regard to the truth of these statements.

133.    As a result, Kool Smiles suffered pecuniary harm.

134.    Further, Defendants' disparagement of Kool Smiles entitles Kool Smiles to special damages because, as a proximate result of Defendants' actions, Kool Smiles suffered direct, pecuniary loss in three forms:  (a) lost profits, (b) direct damages and increased expenses, and (c) damage to its business reputation and good will.

135.    Specifically, Defendants' false, televised statement that over 1,000 complaints have been filed by parents who claimed their kids were mistreated scared Kool Smiles customers and potential new customers.  Following the airing of this statement, Kool Smiles incurred a larger-than-normal number of cancellations and saw a smaller-than-normal number of new clients in the regions where the interviews aired.  Kool Smiles is entitled to special damages in the form of these lost profits and missed opportunities.

## COUNT VIII

## DEFAMATION PER SE

136.    Kool Smiles realleges and incorporates by reference herein all of the allegations contained within Paragraphs 1 through 80 of this Complaint.

137.     Defendants made statements that impute on Kool Smiles the commission of a crime and accuse Kool Smiles of dishonesty, fraud, rascality, or general depravity.

138.    Specifically, Defendants implied that Kool Smiles engages in Medicaid fraud and injures children for pecuniary gain.

139.    A reasonable person would consider Defendants' statements injurious to Kool Smiles' office, business, profession, or calling.

140.    The statements made by Defendants constitute defamation per se, for they have but one clear and obvious meaning.

141.    Plaintiffs are entitled to general damages, including damages for harm to Kool Smiles' loss of business reputation and diminished good will.

## COUNT IX

## BUSINESS DISPARAGEMENT

142.    Kool Smiles realleges and incorporates by reference herein all of the allegations contained within Paragraphs 1 through 80 of this Complaint.

143.    Defendant, through its website, advertisements, and public statements to the press and to Kool Smiles customers, published disparaging words about Kool Smiles' economic interests, including, but not limited to, its business practices, treatment of its patients, and billing procedures.

144.    These words were false, published with malice, and were not published under any applicable privilege.

145.    Defendants' disparagement of Kool Smiles entitles Kool Smiles to special damages because, as a proximate result of Defendants' actions, Kool Smiles suffered direct, pecuniary loss, which is reflected in Kool Smiles' financial records and will be investigated further in discovery.

146.    As a result of Defendants' disparagement, customers cancelled appointments at Kool Smiles clinics.

147.    As a result of Defendants' disparagement, fewer new patients than normal booked appointments at Kool Smiles clinics.

148.    As a result of Defendants' disparagement, Kool Smiles lost profits.

27

149.    As a result of Defendants' disparagement, Kool Smiles spent money on advertising intended to counter the effects of Defendants' advertising activities.

150.    As a result of Defendants' disparagement, Kool Smiles will incur increased costs related to personnel and staffing because of the untrue, negative image presented by Defendants.

151.    As a result of Defendants' disparagement, Kool Smiles was forced to reduce staffing in its clinics, which has and will result in additional costs.

152.    As a result of Defendants' disparagement, Kool Smiles' good will, which it had accumulated for many years, was diminished.

153.    Defendants' disparagement of Kool Smiles entitles Kool Smiles to the special damages stated above because, as a proximate result of Defendants' actions, Kool Smiles suffered direct, pecuniary loss.

## COUNT X

## INJURY TO BUSINES REPUTATION (TEX. BUS. & COMM. CODE § 16.29)

154.    Kool Smiles realleges and incorporates by reference herein all of the allegations contained within Paragraphs 1 through 80 of this Complaint.

155.    Defendants made false, defamatory, and disparaging statements regarding Kool Smiles, which were publicized through Defendants' advertisements, website, and live statements to the press and individual customers.

156.    These actions are likely to injure, and have injured, Kool Smiles' business reputation.

157.    If Defendants are not enjoined from using Kool Smiles' trade name and marks, Kool Smiles' business reputation will continue to be harmed.

158.    Thus, Kool Smiles seeks an injunction pursuant to Tex. Bus. & Comm. Code § 16.29 to enjoin Defendants from:

      a.    Registering or using an internet domain name containing the words "Kool" or "Kool" and "Smiles" in combination; and

      b.    Using or referencing the words "Kool" and "Smiles" in combination in television, radio, or Internet advertisements.

**COUNT XI**

**TRADE NAME AND SERVICE MARK DILUTION
(TEX. BUS. & COMM. CODE § 16.29)**

159.    Kool Smiles realleges and incorporates by reference herein all of the allegations contained within Paragraphs 1 through 80 of this Complaint.

160.    Kool Smiles is a trade name in and of itself, and further, as stated above, "Kool Smiles" and "Kool Smiles General Dentistry for Children" are service marks which were federally registered more than eight years ago and are valid at common law.

161.    Kool Smiles' trade name and service marks are recognized by customers throughout Texas to refer to the kid-friendly dental clinics created by Plaintiffs.  The name and marks were designed to invoke, and have been associated with, a child's positive experience at the dentist.  As such, the service marks are distinctive and strong.

162.    By and through their website, advertisements, and interactions with press as well as individual customers, Defendants have made numerous false and defamatory factual statements using both Kool Smiles' trade name and service marks.  They have done so in a manner that tarnishes or appropriates the goodwill and reputation associated with the name and marks.  This creates likelihood of dilution of the service marks.

163.    Because of Defendant's actions, Kool Smiles' trade name and service marks are being associated with suspicion and fear.  This has been expressed by customers who were

29

exposed to the defamatory statements of Defendants and subsequently informed Kool Smiles

employees that the statements deterred them from bringing their children to Kool Smiles for

treatment.

164.    Thus, Kool Smiles seeks an injunction pursuant to Tex. Bus. & Comm. Code §

16.29 to enjoin Defendants from:

      a.    Registering or using an internet domain name containing the words "Kool" or
          "Kool" and "Smiles" in combination; and

      b.    Using or referencing the words "Kool" and "Smiles" in combination in
          television, radio, or Internet advertisements.

## PERMANENT INJUNCTION

165.    Kool Smiles realleges and incorporates by reference herein all of the allegations

contained within Paragraphs 1 through 164 of this Complaint.

166.    Plaintiffs will succeed on the merits.

167.    Because of Defendants' actions, failure to grant Kool Smiles a permanent

injunction will result in irreparable harm.

168.    Thus, according to principles of equity, federal statutes, and upon such terms as

this Court deems reasonable, Kool Smiles seeks a permanent injunction enjoining Defendants

from:

      a.    Registering or using an internet domain name containing the words "Kool" or
          "Kool" and "Smiles" in combination; and

      b.    Using or referencing the words "Kool" and "Smiles" in combination in
          television, radio, or Internet advertisements.

169.    The benefit of this injunction to Kool Smiles would outweigh the harm, if any,

to the Defendant.

170.    Further, the entry of a permanent injunction would not disserve the public

interest.  Indeed, because existing and potential customers of Kool Smiles were deterred from

receiving dental care as a result of Defendants' actions, the public interest would be served by this injunction.

## ATTORNEYS' FEES

171.   Kool Smiles realleges and incorporates by reference herein all of the allegations contained within Paragraphs 1 through 164 of this Complaint.

172.   This is an exceptional case which entitles Kool Smiles to recover its attorneys' fees pursuant to 15 USC § 1117.

## PRAYER FOR RELIEF

WHEREFORE, Kool Smiles respectfully demands that judgment be made and entered in its favor and against Defendants as follows:

A.   Enter a permanent injunction enjoining Defendant Mauzé & Bagby from the following:

    a.   Using the Kool Smiles name or related marks in television, radio, or internet advertisements;

    b.   Registering or using the Kool Smiles name or related marks in a domain name; and

    c.   Making false and defamatory statements regarding Kool Smiles.

B.   Award Kool Smiles actual and compensatory damages in an amount to be determined at trial;

C.   Award Kool Smiles general damages in an amount to be determined at trial;

D.   Award Kool Smiles punitive damages in an amount to be determined at trial;

E.   Award Kool Smiles special damages in an amount to be determined at trial;

F.     Award Kool Smiles all costs and attorneys' fees incurred in the prosecution of this lawsuit; and

G.     Grant such other and further relief as this Court in its judgment deems just and proper.

## JURY TRIAL DEMAND

Kool Smiles demands a trial by jury on all issues so triable.

Dated:  March 19, 2012                          Respectfully Submitted,


                                                s/ *Darren L. McCarty*
                                                Darren L. McCarty
                                                Attorney-In-Charge
                                                Texas State Bar No. 24007631
                                                Southern District of Texas Bar No. 28364
                                                2828 North Harwood Street, Suite 1800
                                                Dallas, Texas 75201
                                                (214) 922-3400 – Telephone
                                                (214) 922-3899 – Facsimile

                                                Of Counsel:

                                                John A. Kazen
                                                Texas State Bar No. 11132100
                                                Southern District of Texas Bar No. 20351
                                                **KAZEN, MEURER & PÉREZ, L.L.P.**
                                                211 Calle Del Norte, Suite 100
                                                Laredo, Texas 78041
                                                (956) 712-1600 – Telephone
                                                (956) 712-1628 – Facsimile

                                                Sean M. Whyte
                                                Texas State Bar No. 24047100
                                                [Admission to Southern District Pending]
                                                Courtney L. Sauer
                                                Texas State Bar No. 24066026
                                                Southern District of Texas Bar No. 964197
                                                **ALSTON & BIRD LLP**
                                                2828 North Harwood Street, Suite 1800
                                                Dallas, Texas 75201
                                                (214) 922-3400 – Telephone
                                                (214) 922-3899 – Facsimile

                                                **ATTORNEYS FOR PLAINTIFFS
                                                NCDR, L.L.C.; DENTISTRY OF
                                                BROWNSVILLE, P.C. d/b/a KOOL SMILES;
                                                and KS2 TX, P.C. d/b/a KOOL SMILES**

33